[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
The petitioner is confined in the custody of the Connecticut Department of Corrections (DOC) and claims damages for violation of civil rights and intentional infliction of emotional distress. The defendants include the warden of the New Haven Correctional Center, two nurses employed by the DOC, the Commissioner of Corrections and the director of clinical services for the DOC.
These two actions arise from the alleged actions of the defendants, as a result of which, the petitioner claims, his hernia surgery was unreasonably delayed. The cases were consolidated for trial.
 FACTS
The petitioner was diagnosed as having an inguinal hernia in October or November 1995 while confined in a penal facility in South Carolina. He states he first reported this condition to DOC personnel in Connecticut in December but doesn't know to whom he spoke.
In March of 1996, the petitioner was advised that the surgery would not be approved until he was sentenced. Warden Huckaby had CT Page 12732 so advised him in February, but in a postscript, stated that "medical will continue to monitor your condition."
On June 5, 1996 the petitioner was taken to the emergency room at the UConn Medical Center because the hernia could not be reduced. The surgery was performed at the center on August 4, 1996 after a pre-surgical exam on August 1.
The petitioner was also at the center on July 21, apparently as part of the pre-surgery preparation when a process was ordered to determine the cause of another symptom.
The petitioner was not sentenced until some time after the surgery.
 DISCUSSION I
The petitioner takes the position that since he was denied immediate surgery because of his status as an unsentenced prisoner, he was deprived of necessary care.
The defendant, Edward Blanchette, is director of clinical services for the DOC and testified at great length as to the process by which inmates are screened and scheduled for surgery.
Of significance, is his assertion that status as a sentenced or unsentenced inmate is only one of the criteria for determining priority for elective surgery. Elective surgery is surgery which is not required by emergency or medical necessity. The petitioner's situation was such that it had a lower priority but was deemed to be required.
Dr. Blanchette noted that because of security concerns, inmate population demand, and the hospital surgeons' availability, elective surgery can require considerable time and some delays.
It was for these reasons and not the petitioner's unsentenced status that the surgery did not take place sooner, according to Dr. Blanchette. He also stated that the petitioner received care of a type consistent with community standards.
The petitioner offered no medical support for his position CT Page 12733 that his care was improper or substandard.
As for his reliance on the existence of a policy which discriminated against him as an unsentenced inmate, the court notes that he never proved that such a policy existed, but even if it did, Dr. Blanchette's testimony clearly indicates that he was treated under other policies which considered his medical condition.
 II
The petitioner argues that the defendants displayed deliberate indifference to him in view of his condition. An examination of his medical record maintained by the DOC totally rebuts this assertion. Almost 240 pages long, this record describes numerous health problems for which the petitioner was treated — including a root canal procedure. Entries are detailed and suggest the same style of medical records this court examines on a regular basis in trying and pre-trying tort cases.
The case notes and reports concerning this hernia surgery are numerous and reflect a careful and thorough monitoring of the situation.
As for the individuals against whom this complaint is directed, there is no evidence to suggest this attitude in any of these parties.
The petitioner testified but called only Dr. Blanchette, who was present with defense counsel. The defendants Shalazar and Sullivan were treating nurses. They held no control over the petitioner's surgery and had no voice in its scheduling. Warden Huckaby had even less to do with the petitioner's medical situation.
None of these defendants were confronted with questions concerning the petitioner's complaints. The court does not find evidence of misfeasance in the huge medical record nor in the testimony elicited from the petitioner or Dr. Blanchette.
 III
The petitioner's claim of cruel and unusual punishment is equally bereft of substance. An examination of the medical record notes does not suggest that the petitioner was suffering great CT Page 12734 pain or disability. In his testimony, he admitted that he didn't need surgery at first but only as it progressed. He admitted that neither Nurse Shalazar nor any other medical care giver ever refused to see him. In the case notes covering his ER visit of June 5, 1996, at which the surgery process was started, the petitioner is quoted as having swelling and pain "for the last two weeks," and he reports no vomiting, fever, chills or pain in urination.
As for any stress, the petitioner requested mental health assistance because of the charge against him, the trial and his exposure upon conviction. He never attributed any stress to his hernia problem.
 IV
The petitioner has also alleged that some or all of these defendants acted either to delay his surgery or failed to act to expedite it.
The evidence before the court is that only Dr. Blanchette had any control over such decisions. In fact, the petitioner admitted that he knew the nurses did not make such a decisions.
There was no evidence presented as to what any other defendant did or failed to do to prejudice the petitioner.
As for Dr. Blanchette, his testimony as to the medical and surgical implications of the petitioner's condition and treatment, supported by the medical record, remains uncontroverted.
 V
It must also be stated that the petitioner has not enunciated any element of damages, other than a claim that he was denied care. He did not describe any serious or protracted pain and did not suffer with symptoms usually associated with an irreducible hernia.
He has not shown an unreasonable delay in addressing his particular condition.
 CONCLUSION CT Page 12735
It is the conclusion of the court that the petitioner received appropriate medical care and surgical intervention and that his surgery was not influenced by his inmate status. The care afforded him was at least at the level of the community standard and in many respects exceeded the same.
The petition is denied in each case and judgment may enter in favor of all defendants.
Anthony V. DeMayo Judge Trial Referee